UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DIANA MATA-CUELLAR, individually ) <br> and on behalf of all persons similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TENNESSEE DEPARTMENT OF SAFETY, ) <br> *et al.*, ) <br> ) <br> Defendants. ) | Case No. 3:10-0619 <br> Judge Trauger |

## MEMORANDUM

Pending before the court is the Plaintiff's Motion Relative to Class Certification (Docket No. 31) to which the defendants have responded (Docket No. 42). As, without further discovery, it is not possible to determine whether the plaintiff's proposed class complies with the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1), the motion will be denied without prejudice.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This putative class action "challenges the policies, practices and procedures of [the] Tennessee Department of Safety ("TDS") in confiscating valid, federally-issued naturalization certificates of naturalized citizens, or other [government-issued] 'Identification Documents' . . . that are presented by foreign-born persons legally present in the United States in support of their applications for a Tennessee driver license or identity card, absent any reasonable basis to suspect or believe that the documents are counterfeit or otherwise invalid." (Docket No. 7 at 2.)

1

The named plaintiff, Diana Mata-Cuellar, is a naturalized citizen of the United States. (*Id.* at 11.) The plaintiff alleges that, on March 25, 2010, she attempted to apply for a driver's license at a TDS office in Morristown, Tennessee, and, during that process, her valid, federally issued naturalization certificate was "improperly confiscated" by TDS officials working at the driver's license office. (*Id.* at 4-5.) The certificate was, without explanation, then held for more than one month and returned "defaced" and "altered" by the TDS. (*Id.* at 4-5, 11, 17-19.) The plaintiff further alleges that the TDS had no "reasonable suspicion" that the document was counterfeit and did not follow state or internal regulations in terms of taking the document or documenting its seizure. Moreover, the plaintiff alleges that the TDS improperly put the onus on the plaintiff to prove that the document was legitimate. (*Id.* at 5, 20, 22-23.)

Indeed, it was only once the plaintiff obtained legal counsel that she was able to obtain her naturalization certificate back from the TDS. (*Id.* at 19.) The plaintiff alleges that she still does not have her driver's license and that nothing would prevent the TDS from confiscating her naturalization certificate if she re-applied. (*Id.*) Moreover, her naturalization certificate "has been altered" and now appears tampered with and, therefore, "would not be accepted as genuine," which forces the plaintiff to incur the costs of obtaining a replacement certificate in addition to the anxiety caused by (1) not having her naturalization certificate for a time, (2) now having an illegitimate appearing certificate, and (3) still not having a driver's license. (*Id.* at 24.)

The TDS is a state law enforcement agency that, by state law, is "empowered to enforce the laws of the State of Tennessee relative to issuance and regulation of driver's licenses in the

2

State of Tennessee." (*Id.* at 11.)  The plaintiff alleges that, on August 15, 2005, the TDS promulgated a General Order (General Order 544) "relative to fraudulent document detection and confiscation" and that the policies pronounced in that order, combined with poor training, resulted in the improper confiscation and retention of the plaintiff's legitimate materials solely on the basis of her national origin and race, despite the fact that previous similar incidents and at least one lawsuit have put senior TDS officials on notice of the problem of improper, ethnicity-based document confiscation at TDS offices. (*Id.* at 11-13, 20-22.)

Particularly relevant for purposes of this motion, the plaintiff alleges that "defendants began their practices of confiscating and retaining federal identification documents before the incidents involving the named Plaintiff, and defendants continue to engage in the practices against [] numerous" similarly situated individuals. (*Id.* at 25.)  The plaintiff argues that, unless the TDS is broadly enjoined from carrying out its practices of wrongfully seizing identification documents, the plaintiff and others like her will not be able to safely and comfortably live and work in the state. (*Id.* at 25-26.)

On June 24, 2010, on behalf of herself and a putative class of similarly situated individuals, the plaintiff filed the Complaint. (Docket No. 1.)  In her Amended Complaint filed on July 12, 2010, the plaintiff (again on behalf of herself and the proposed class) asserted claims under Section 1983, Title VI, and the Tennessee Constitution against the TDS and a group of TDS employees responsible for promulgating, implementing and enforcing policy, in their

3

official and individual capacities.[1] (Docket No. 7 at 10-13.) The plaintiff seeks damages and assorted declaratory and injunctive relief. (*Id.* at 31-34.)

On August 19, 2010, just under 60 days after the Complaint was filed, the plaintiff moved for class certification (Local Rule 23.01(b) dictates that, absent court order, the motion for class certification is to be filed within 60 days of the Complaint). (Docket No. 31.) While the plaintiff seeks additional time to decide whether the "damage claims are susceptible to [Rule 23(b)(3)] class-wide treatment," she seeks certification of a Rule 23(b)(2) class for injunctive and declaratory relief. (Docket No. 32 at 11-12.)

Specifically, the plaintiff's proposed class is "[a] Rule 23(b)(2) class composed of all foreign-born persons who, upon presentation of their valid, federally-issued naturalization certification or other [defined] Identification Documents in support of an application for a Tennessee driver license, learner's permit, or state-issued identity card on or after August 15, 2005, have had or will have these documents seized or retained by Defendants." (*Id.* at 1.)

## ANALYSIS

### I. The Motion for Class Certification

The principal purpose of class actions is to achieve efficiency and economy of litigation, both with respect to the parties and the courts. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982). The Supreme Court has observed that, as an exception to the usual rule that litigation is conducted by and on behalf of individual named parties, "[c]lass relief is 'peculiarly appropriate'

---

[1] The plaintiff sued Frankie Floied, the Director of the Criminal Investigation Division of the TDS, in his official capacity only. (Docket No. 7 at 12.)

when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Id.* at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The Court directs that, before certifying a class, district courts must conduct a "rigorous analysis" of the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *See Falcon*, 457 U.S. at 161. The Sixth Circuit has stated that district courts have broad discretion in deciding whether to certify a class but that courts must exercise that discretion within the framework of Rule 23. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Although a court considering class certification may not inquire into the merits of the underlying claim, a class action may not be certified merely on the basis of its designation as such in the pleadings. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079. In evaluating whether class certification is appropriate, "it may be necessary for the court to probe behind the pleadings . . .", as the issues concerning whether it is appropriate to certify a class are often "enmeshed" within the legal and factual considerations raised by the litigation. *Falcon*, 457 U.S. at 160; *see also In re Am. Med. Sys.*, *Inc.*, 75 F.3d at 1079;. The party seeking class certification bears the burden of establishing that the requisites are met. *See Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003).

### A. Rule 23(a)

Before considering whether the class may be certified under any of the provisions of Rule 23(b), any party seeking class certification must first meet all four prerequisites of Rule 23(a) —

5

numerosity, commonality, typicality, and adequacy of representation — before a class can be certified. *See* Fed. R. Civ. P. 23(a); *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

### i. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In *Senter,* the Sixth Circuit explained that there is "no specific number below which class action relief is automatically precluded" and that it is the circumstances of the case, not a strict numerical test, that determines impracticability of joinder. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976). Likewise, there is no "automatic cut off point at which the number of plaintiffs makes joinder impractical." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). But, the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy [numerousity]." *Id.*

Apart from class size, other case-specific factors that courts should consider in determining whether joinder is impracticable include: the judicial economy, the geographical dispersion of class members, the ease of identifying putative class members, and the practicality with which individual putative class members could sue on their own. *See* Alba Conte & Herbert Newberg, 1 Newberg on Class Actions § 3:6 (4th ed. 2003) ("Newberg"); *see also Kerns v. Caterpillar, Inc.*, 2007 WL 2044092, at *3 (M.D. Tenn. July 12, 2007) (citing Newburg).

6

Numerosity is, at this point, a stumbling block for the plaintiff. The plaintiff "estimate[s]" the class size "to be around 100 persons." (Docket No. 32 at 3.) The plaintiff concedes that "the actual class size may indeed be substantially larger or smaller." (*Id.*)

The "100 persons" estimate has its origin in an open records request submitted by plaintiff's counsel, Elliott Ozment, to the TDS on May 19, 2010, which sought "statistical information relative to the seizure" of documents demonstrating either U.S. citizenship or lawful permanent resident status ("Identification Documents") since May 2005. (Docket No. 31 Ex. 2.) For each of 15 types of documents that could demonstrate citizenship or permanent resident status, Ozment sought a wide array of statistical information related to the TDS's seizure of those documents at driver's license offices, including the total number of seizures, information on the race of the individual whose documents were seized, the number of seized documents determined to actually be fraudulent, and so forth. (*Id.*)

In a May 28, 2010 written response to this request, Lizbeth Hale, a TDS staff attorney, informed Ozment that the TDS does not compile such statistical information but would assemble this information if Ozment was willing to pay the considerable (at least $2,500) cost of doing so. (Docket No. 31 Ex. 3.) Hale estimated that there were 1,825 files that would need to be initially reviewed, some of which would be responsive to Ozment's request. (*Id.*)

In his affidavit submitted along with the plaintiff's motion, Ozment states that, in a subsequent phone call, Hale clarified that there were roughly 1,825 files "containing instances of suspected fraudulent documents which were seized by the TDS since May 2005," but that no more than 100 involved Identification Documents seized at driver's license offices. (Docket No.

31 Ex. 1.) In her affidavit, Hale states that she does not remember making the "no more than 100" comment, but she does recall telling Ozment that she simply did not know how many seizures of the type described in the open records request there had been. (Docket No. 42 Ex. 1.)

The defendants also submit the affidavit of Larry Pollard, a special agent with the TDS Criminal Investigation Division. (Docket No. 42 Ex. 2.) Pollard claims to have "diligent[ly]" searched "all files related to document seizures conducted by driver's license examiners or their supervisors throughout the state" from June 24, 2009 through April 26, 2010, and, during that time, "there were 6 seizures of documents of foreign born persons in the State of Tennessee." (*Id.*) Pollard claims that, of the six, only the plaintiff had legitimate documents seized, and he provides the circumstances and bases for the other five seizures. (*Id.*) Pollard states that he is still investigating whether any seizures have taken place since April 26, 2010. (*Id.*)

A key issue bearing on numerosity is the impact of the one-year statute of limitations that appears to apply to all of the plaintiff's claims.[2] The defendants argue that the cause of action for each member of the proposed class arose at the moment that the individual's legitimate documents were seized. (Docket No. 42 at 3 citing *e.g. Herrin v. Dunham*, 2008 WL 2781456,

---

[2] The plaintiff's Section 1983 claim is subject to a one-year statute of limitations, as is the Title VI claim. *Pruitt v. City of Clinton*, 2010 WL 3009513, *6 (E.D. Tenn. July 28, 2010); *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 460 (6th Cir. 2001). It is unsettled whether the plaintiff's remaining claim, for violations of the Tennessee Constitution, is actionable at all. *Peterson v. Dean*, 2009 WL 3517542, *1-2 (M.D. Tenn. Oct. 23, 2009)(Wiseman, J)(noting that no private damages claim may be brought for violations of the Tennessee Constitution, but it is unsettled whether declaratory or injunctive relief claims may be brought). The court could find no case law addressing what the statute of limitations for a Tennessee Constitution claim might be, but, if such a claim is viable, the one-year limitation for Section 1983 claims, which will often mirror the state constitutional claim, certainly seems appropriate.

8

*4 (E.D. Mich. March 17, 2008)(finding cause of action accrued when illegal seizure of property took place)).

Moreover, the defendants argue, the "continuing violation" doctrine does not apply to toll the statute of limitations for each plaintiff until the seized documents were returned. (Docket No. 42 at 3-4.) As the defendants point out, the continuing violation doctrine is rarely extended outside of the employment discrimination context to the Section 1983 realm, because "a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert v. State of Ohio Dept. of Transportation*, 172 F.3d 934, 940 (6th Cir. 1999); *see also Village of Milford v. K-H Holding Corp.*, 390 F.3d 926, 933 (6th Cir. 2004). Therefore, the defendants argue, the claim of the putative class members accrued for statute of limitations purposes when the documents were seized. (Docket No. 42 at 4.) And, as discussed above, the evidence suggests that, within the one-year prior to the filing of this lawsuit, only one individual, the plaintiff, had her valid identification documents seized by the TDS.

The plaintiff did not file a reply in support of the class certification motion. The case law and evidence offered by the defendants is weighty and unchallenged on (1) the applicability of the one-year statute of limitations, (2) the inapplicability of the continuing violations doctrine, and (3) the meager size of the putative class, considering the one-year statute of limitations. Again, it is the plaintiff's burden to establish that the Rule 23 prerequisites are met, and, on the present record, it appears that there may only have been one individual who falls within the proposed class, when the statute of limitations is considered. Clearly, the proposed class would

9

fail on the numerosity requirement with only one member, as joinder would not be impracticable.[3]

That said, resolving whether an individual falls within this proposed class requires a fairly detailed and potentially time consuming examination of matters such as (1) the ethnic background of the individual, (2) whether Identification Documents were seized, and (3) whether those documents were legitimate. As noted above, the TDS's investigator, Mr. Pollard, was still investigating this issue, from his perspective, as of the time that he submitted his affidavit in this case. Therefore, additional time and further discovery by the plaintiff may well reveal additional putative class members.

Local Rule 23.01(b) dictates that, after a party moves for class certification, the court may "order postponement of the [class certification] determination pending discovery," but, where practicable, the court should fix a date for the renewal of the class certification motion.

---

[3]The plaintiff argues that, generally, information on the "exact class size is not required." (Docket No. 32 at 3 citing *Thonen v. McNeil-Akron*, 661 F. Supp. 1271, 1273 (N.D. Ohio 1986) and *Coleman v. GMAC*, 220 F.R.D. 64, 70 (M.D. Tenn. 2000)(Trauger, J)(where numerosity was undisputed estimating that there were more than 100,000 individuals in the proposed class from data provided by defendant.)). Here, however, the plaintiff's estimate of 100 persons is based upon her counsel's recollection of an estimate provided by Hale, who was speculating as to the number of Identification Document seizures at driver's license offices – *not the number of seizures of legitimate documents presented by foreign-born individuals*. (Docket No. 31 Ex. 2.) The plaintiff also argues that the circumstances of this case demonstrate the impracticability of joinder, even if the class size is significantly smaller than 100. (Docket No. 32 at 4-6.) That is, the proposed class members are "spread across Tennessee, and may even have moved out of the state," may lack financial resources, may fear retaliation from bringing suit, and would be unlikely to individually bring claims. (*Id.*) It is also true that, in civil rights discrimination actions, "the numerosity requirement is usually satisfied by the showing of a colorable claim by the named plaintiff who is a member of a larger class having potentially similar claims." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974). As indicated herein, however, it is simply unclear whether there is a "larger class" here, and, until clearer answers on that question become available, class treatment is not appropriate.

As indicated above, it is reasonable under the circumstances to allow the plaintiff additional time to determine whether there are additional putative class members. In addition to the apparently ongoing discovery as to whether the "damage claims are susceptible to class-wide treatment" under Rule 23(b)(3), the court will permit the plaintiff 120 days from the date of the accompanying Order to conduct discovery on numerosity and, then, either renew her motion or provide notice to the court on the status of discovery.

### ii. The rest of the Rule 23(a) and Rule 23(b) analysis

On the record at this point, if the proposed class was shown to be sufficiently large, the other pertinent Rule 23 elements appear to be met. Indeed, the defendants do not challenge the plaintiff's argument that the proposed class passes muster as to Rule 23(a)(3) typicality, Rule 23(a)(4) adequacy of representation, and Rule 23(b)(2), which is the appropriate class treatment where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[4] Fed. R. Civ. P. 23(b)(2).

---

[4] Indeed, the defendants spent a considerable portion of their brief arguing that the plaintiff does not have standing to sue for injunctive or declaratory relief because her injury is "past," and the likelihood of future injury is not "sufficiently real and immediate to show an existing controversy." (Docket No. 42 at 5-9 citing *e.g. Schultz v. U.S.*, 529 F.3d 343, 349 (6th Cir. 2008)). That is, the defendants argue that "it is totally speculative to allege that plaintiff's certificate of citizenship would again be seized if she were to go back to the driver's license station and seek a driver's license." (*Id.* at 7.) The court fails to see how this concern is speculative. It appears undisputed that the TDS already confiscated the plaintiff's legitimate paperwork once, and the defendants provide no indication that they have put trustworthy safeguards in place to prevent a recurrence of that event. The defendants also argue that the declaratory relief sought by the plaintiff is overly broad. (*Id.* at 8.) Whatever the merit of this argument, it is misplaced at this point; the only present concern is whether the plaintiff may represent a class that will seek injunctive and declaratory relief, not the parameters of that relief.

11

### a.     Rule 23(a)(2)

As to Rule 23(a)(2), in order to establish commonality, the plaintiff must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Sixth Circuit has characterized the commonality requirement as "qualitative rather than quantitative" and has observed that "[v]ariations in the circumstances of class members are acceptable, as long as they have at least one issue in common." *See In re Am. Med. Sys.*, *Inc.*, 75 F.3d at 1080; *Bacon*, 370 F.3d at 570. This common issue must be one "the resolution of which will advance the litigation." *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

Here, the plaintiff provides a list of eight supposedly common issues of fact and/or law, all of which relate directly to the plaintiff's claim that the TDS improperly seized naturalization and other Identification Documents without a proper basis for doing so. (Docket No. 32 at 7.) The defendants take each of these supposedly common issues in turn and attempt to show that the issue is not "common" to the proposed class. (Docket No. 42 at 9-13.)

For each allegedly common issue, such as "whether [the TDS] regularly engaged in prolonged detention of naturalization certificates" or whether this practice would violate the class member's constitutional rights, the defendants simply argue that "the potential claims vary far too much for there to be common questions of law or fact," and "each case will be very different." (Docket No. 42 at 9-13.) This is not a particularly persuasive argument in the Rule 23(a)(2) context, which recognizes that "[v]ariations in the circumstances of class members are acceptable, as long as they have at least one issue in common."

12

Here, to the extent this class has multiple members, they were all subject to the improper seizure of legitimate documents while applying at a TDS driver's license office. As indicated above, this common circumstance unquestionably generates common questions of fact or law across the class – such as the constitutionality of the policies used to evaluate and seize the documents and whether the training provided to those interacting with putative class members was sufficient to protect those individuals' constitutional rights. On this record, this proposed class certainly satisfies the requirement that all class members have at least one material issue in common.

        **b.**     **Rule 23(a)(3)**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Sixth Circuit has concluded that a proposed class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys. Inc.*, 75 F.3d at 1082 (internal quotation omitted). It follows that, in situations where typicality is found, "the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.* In *Sprague*, the Sixth Circuit summarized the "premise" of the typicality requirement: "as goes the claim of the named plaintiff, so go the claims of the class." 133 F.3d at 399.

To the extent that other class members exist, the plaintiff's claims would certainly appear to be typical of the proposed class. The plaintiff and the proposed class members are

13

foreign-born persons legally present in the United States who each used legitimate documents to obtain a driver's license or other identity card, yet had those materials seized. In light of this, there is every indication that, in seeking an injunction and declaratory relief that would prevent the TDS from improperly seizing identification documents, the plaintiff would be advancing both her interests and the interests of the proposed class, satisfying the typicality requirement.

    **c. Rule 23(a)(4)**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To alleviate conflict-of-interest concerns, the plaintiff must show that she (1) has common interests with the rest of the class and (2) will vigorously prosecute the interests of the class through qualified counsel. *See In re Am. Med. Sys.*, 75 F.3d at 1083. The common interest criterion ensures that the plaintiff has a strong incentive to represent the interests of the class. *Id.* The second criterion inquires into the competency of counsel. *See id.*

Consistent with the typicality discussion, there is every reason to believe that the plaintiff's interests, especially in receiving declaratory and injunctive relief to prevent the practices that have adversely affected the class members, directly align with those of the rest of the putative class and every indication that the plaintiff and her counsel would work diligently on behalf of the class. In short, there is nothing to suggest that Rule 23(a)(4) would be a hindrance to class certification.

    **d. Rule 23(b)(2)**

14

Again, class treatment under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Claims of "class-wide discrimination" are "particularly well suited for 23(b)(2) treatment since the common claim is susceptible to a single proof and subject to a single injunctive remedy." *Senter*, 532 F.2d at 525.

The plaintiff argues that this class is maintainable under Rule 23(b)(2) because the TDS has acted on grounds generally applicable to the class. That is, consistent with the plaintiff's experience, the TDS engaged in a "widespread" and "pervasive pattern" of "seizing and retaining the valid naturalization certificates and Identification Documents of foreign-born applicants for Tennessee driver licenses and state identification cards without proper standards, training, and supervision for developing a reasonable suspicion that such documents are fraudulent." (Docket No. 32 at 10-11.) The plaintiff maintains that these actions "threaten the entire proposed class" and that declaratory and injunctive relief is appropriate and necessary to "protect the rights of all class members to obtain a Tennessee driver license or state identification card free from unreasonable seizure and unlawful racial discrimination." (*Id.*)

Again, to the extent that the plaintiff's experience was not relatively unique, Rule 23(b)(2) treatment appears appropriate. That is, if the TDS is enforcing policies and practices that allow class members' *legitimate* Identification Documents to be seized and retained by the TDS, it would certainly seem that little individual evaluation of the legitimacy of those materials was taking place, but, rather, the TDS would be acting on grounds generally applicable to the

15

class, and, to the extent that injunctive and declaratory relief was appropriate given the TDS's conduct, "a single injunctive remedy" to prevent the general conduct would seem appropriate.

## CONCLUSION

The plaintiff has not met her burden to show that the class is sufficiently numerous under Rule 23(a)(1). The court will deny the motion for class certification without prejudice and allow the plaintiff, within 120 days of the date of the accompanying Order, to either (1) renew the motion with additional evidence of numerosity or (2) provide an update to the court on the status of class discovery. As noted above, the plaintiff has requested an extension of time to conduct discovery to determine whether Rule 23(b)(3) class certification should be sought. The court will grant this request and set the same 120-day time line.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge